## Genkinger Petition

*Orville Brown*, for accountant.

*Ronald E. Jones*, for exceptants.

POWERS, J., December 31, 1958.—. . . We are concerned with exceptions to the final account and proposed schedule of distribution of trustee-accountant. The trustee-accountant, Robert S. Genkinger, created this trust by a declaration of trust dated December 7, 1938. By this declaration of trust, the said Robert S.

Genkinger became not only the trustee, but one of the beneficiaries of the trust as well.

Among the provisions in the trust is: "The beneficiaries in consideration of the premises take this trust subject to all provisions stipulated by the Trustor". In general, the provisions for the operation of the trust required the trustee to:

1. Make payment of all indebtedness against the real estate which was the original asset of the trust.

2. Concurrently with the payment of such indebtedness, the trustee was to maintain the real estate by the payment of taxes, insurance, repairs, etc.

3. After such payments the trustee was to pay the balance as follows: 75 percent to beneficiaries, and the remaining 25 percent to be accumulated at the discretion of the trustee as a sinking fund to restore, replace or make major improvements on the real estate, the balance of the accumulation not used for such purposes to be paid to the beneficiaries, after a 10-year period.

Additionally, the trustee was empowered to invest accumulated sums above mentioned in any good investments not being restricted to legal investments.

One of the primary purposes of the trust was to secure efficient management and to maintain ownership and control of the real estate in the trustor's immediate family, that is, the named beneficiaries, all of whom are brothers and sisters.

This trust differed from the ordinary trust because originally there was neither money nor net assets of any kind in the trust. The trustor bought real estate for $43,500 which was paid for by the trustor giving his note for a bank loan of $40,000, and by advancements from certain beneficiaries of $3,500. The advancements of $3,500 were repaid to the beneficiaries. No beneficiary ever made a contribution to the trust.

The trust grew to a gross value of $124,481.48. It is upon this sum so created that he charged a five percent commission of $6,224.06.

We have given careful consideration to the very excellent brief of counsel for exceptants. The court was very much impressed by the testimony of Robert G. Dixon, trust officer of the Lawrence Savings & Trust Company. On matters pertaining to whether fees are reasonable or not Mr. Dixon would be well qualified to speak. He is trust officer of one of our most respected financial institutions, the Lawrence Savings & Trust Company.

Mr. Dixon clearly indicated by his testimony that the exceptions to these charges are not well founded. As we have said before, the trustee in the instant case was not obligated or limited to legal investments. It is disclosed by the testimony that there was a loss of $500. On this point Mr. Dixon testified as follows:

"Q. There's an item there of $500 as an investment, that perhaps came to your attention as a loss in this estate?

"A. That's correct.

"Q. What were the profits from the personal property, that is, from the securities in this estate?

"A. $12,208.06.

"Q. In the operation of a trust lasting this long with as much investment and re-investment as is indicated with a profit of that size, would there be anything unusual about a loss of $500?

"A. In my opinion there would be nothing unusual.

"Q. Would there in your opinion be any reason to surcharge a trustee for an investment of $500.00 in such an operation?

"A. No there would not."

We also incorporate in this opinion the testimony of Mr. Dixon relative to attorney's fees.

"Q. What is the usual relationship between attorney's fees and the fees of the fiduciary as to percentage?

"A. Well, that would depend largely on the amount of work involved or done by the attorney, but in my opinion any fee that an attorney would charge which would not exceed 50 percent of the trustee's commission would not be excessive. In estates, it's been my experience that an attorney's fees would run about two thirds of the commission, but in a continuing trust of this kind about 50 percent would be a fair figure.

"Q. According to the system of charges of the Lawrence Savings & Trust Company, what would be the amount of commission due the trustee in this trust as a total, that is, a commission on the principal and a commission on income?

"A. As I have computed the commission that we would have charged if we had been handling this trust, I come to a figure of $9,911.00.

"Q. If the Lawrence Savings & Trust Company handled this trust estate would that have been the amount that you would have charged?

"A. That's correct.

"Q. That is in accordance with your usual practice?

"A. That's right."

Exceptants produced no witness who in any way impeaches the testimony offered by the trust officer of the Lawrence Savings & Trust Company.

We therefore make the following

### Decree Nisi

Now, December 31, 1958, the exceptions to the account are dismissed and the account is confirmed nisi, to become absolute unless exceptions are filed within 20 days from the date hereof.